UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMBOTELLADORA ELECTROPURA S.A. de C.V., an El Salvador corporation,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ACCUTEK PACKAGING EQUIPMENT COMPANY, INC., a California corporation; and DOES 1 through 25, inclusive,<br><br>　　　　　　　　　　　Defendant. | Case No.: 3:16-cv-00724-GPC-DHB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>[ECF No. 3] |

　　　Before the Court is Defendant Accutek Packaging Equipment Company, Inc.'s ("Accutek") motion to dismiss (ECF No. 3) the first and second causes of action of Plaintiff's complaint (the "Complaint") (ECF No. 1) for failure to state a claim on which relief can be granted.  The motion has been fully briefed.  Plaintiff Embotelladora Electropura S.A. de C.V. ("Electropura") filed an opposition on June 17, 2016.  ECF No. 8.  Defendant then filed a reply on June 30, 2016.  ECF No. 11.  Upon consideration of the moving papers and the applicable law, and for the reasons set forth below, the Court **DENIES** Defendant's motion to dismiss.

## BACKGROUND

This case concerns the sale of an allegedly defective water bottling machine by Defendant Accutek to Plaintiff Electropura. Plaintiff seeks relief for the fact that the machine it purchased does not operate as promised by Defendant and as required by Plaintiff's stated business needs. Plaintiff has brought seven claims against Accutek: 1) fraudulent misrepresentation and conspiracy to defraud; 2) fraudulent concealment and conspiracy to defraud; 3) negligent misrepresentation; 4) breach of written contract; 5) breach of express warranty; 6) breach of implied warranty; and 7) restitution and unjust enrichment. Defendant now seeks to dismiss only those causes of action – that is, the first and second – that sound in fraud.

Defendant Accutek is a California corporation with a principal place of business in Vista, California and Plaintiff Electropura is a Salvadoran corporation with a principal place of business in San Salvador, El Salvador. Complaint ¶¶ 5–6. On or about June 12, 2016, Electropura contacted the Defendant to inquire into the potential purchase of Accutek's high-speed water bottling equipment, spare parts for use in Electropura's water-bottling facilities, as well as Accutek's expertise in installing, maintaining, and repairing such equipment. *Id.* ¶ 19. Following this invitation to deal, Electropura's representatives began discussions with Defendant's representatives Joseph Quesada, a sales representative, and Jaime Garcia, a senior technician, about the business needs of Plaintiff and the ability of Defendant's equipment to meet those needs. *Id.* ¶ 20.

During those negotiations, Electropura told Defendants that it required equipment capable of "filling 680 milliliter-sized bottles at the rate of not less than 7,200 bottles per hour ("BPH"), 380 milliliter-sized bottles at the rate of not less than 6,200 BPH and 1,300 milliliter-sized bottles at the rate of not less than 5,000 BPH," and asked Defendants "for their advice and recommendations as to which of Defendants' several different models of high speed water bottling equipment" would meet those specifications. *Id.* In response to Plaintiff's inquiry, Defendant then recommended the "Monoblock rinse, fill and capping system" as best suited to satisfy Plaintiff's purpose.

*Id.* ¶ 21 (internal citations omitted).  At about that same time, Defendant also presented a promotional sales brochure to Electropura that described the "MB Series mono block – rinse / fill cap systems" as having the following qualities and capabilities: "Up to 19,000+ container per hour* high speed production output," "sanitary stainless steel construction," "fully automated synchronized rinse, fill, cap system," and "fully automated CIP system." *Id.*  Ultimately, Defendant specifically recommended that Electropura purchase the "Biner Ellison Monoblock Systems 24 head washer 24 head filler 8 head capper with accessories and parts system" (the "Monoblock") as the best match for Plaintiff's needs. *Id.* ¶ 22 (internal citations omitted).

On December 10, 2012, Defendants provided Plaintiff with Quote No. 52113 for the Monoblock (the "Monoblock Quote"), along with related parts and accessories.[1]  *Id.* ¶ 24.  The Monoblock Quote was written on Accutek's letterhead, included the name of the sales representative, Joe L. Ouezada, who prepared the report, and described the Monoblock features in detail.  ECF No. 1-2, Exhibit 2 at 13.  Notably, the Monoblock Quote stated that the machine was "capable of Speeds of up to 11000 BPH (bottles per hour)," *id.*, ECF No. 1-2 at 15, and that many of its parts were made of stainless steel, *id.* at 13, 15–20.  In reliance upon those representations, Electropura purchased the Monoblock for $370,408.46 on March 28, 2013.  *Id.* ¶ 25; ECF No. 1-2, Exhibit 2 at 25–26.  To finance the purchase of the Monoblock, Plaintiff obtained a loan, at interest, with a principal of $375,000.  *Id.* ¶ 26.  Thereafter, Plaintiff incurred additional costs in the shipment and delivery of the Monoblock to El Salvador, amounting to $49,982.14, and installation of the system, $15,893.97.  *Id.* ¶ 27.  By the fall of 2013, the Monoblock was up and running at Plaintiff's facilities in San Salvador.  *See id.* ¶ 27.

Soon after the Monoblock went live, Electropura discovered, on or about December 2013, that the Monoblock was not functioning "in accordance with the

---

[1] The Complaint also alleges that on June 11, 2012, Defendants provided Plaintiff with Quote No. 48332 for a machine with a "12 Head Washer 12 Head Filler 8 Head Capper."  That machine, however, was not the one ultimately recommended to Electropura or the one bought by them.  Complaint ¶ 23.

representations, specifications, promises and assurances made by Defendants." *Id.* ¶ 28. The Monoblock's actual production hovered at 1,200 BPH for 1,300 milliliter-sized bottles, 1,800 BPH for 680 milliliter-sized bottles, and 2,400 BPH for 380 milliliter-sized bottles, *id.*, far below Electropura's business needs, stated previously. In addition, Plaintiffs asserts that the Monoblock did not work properly; that "key components of the Monoblock quickly oxidized and therefore became unsanitary for bottled water use"; and that "many of the Monoblock's key components contained latent but inherent defects in materials and workmanship" making the machine "essentially unfit and unsuitable for its intended purposes." *Id.* Due to the Monoblock's deficiencies and defects, Plaintiff maintains that it has suffered damages in excess of $800,000, accounting for lost sales, lost profits, and other consequential damages. *Id.* ¶ 13.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) the plaintiff must set forth in the complaint a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed R. Civ. P. 8(a), and giving "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering whether dismissal is suitable, the Court will take all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). The Court will also consider whether the complaint alleges sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

In the event that the Court does grant a motion to dismiss, Rule 15 provides that leave to amend should be freely granted when justice so requires. Accordingly, when a court dismisses a complaint for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (internal citations omitted). Amendment, therefore, may be denied if it would be futile. *See id.*

## DISCUSSION

Plaintiff's first and second causes of action allege fraud and conspiracy to commit fraud. Complaint ¶¶ 31–45. Accordingly, to survive the motion to dismiss Plaintiff must have alleged facts sufficient to sustain the elements of both claims. Under California law, the elements of fraud are "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990, 22 Cal.Rptr.3d 352, 102, 102 P.3d 268, 274 (2004). To state a claim for conspiracy to defraud, the Plaintiff must allege sufficient facts for civil conspiracy: 1) formation and operation of the conspiracy; 2) wrongful conduct in furtherance of the conspiracy; 3) damage resulting from such wrongful conduct. *Wasco Prods. v. Southwall Techs.*, 435 F.3d 989, 992 (9th Cir. 2006); *Cellular Plus, Inc. v. Super. Ct.*, 14 Cal. App. 4th 1224, 1236 (Cal. Ct. App. 1993). Because Rule 9(b) applies to claims sounding in fraud, the complaint must also plead the circumstances of fraud with particularity.

**A. Particularity of the Pleadings**

Accutek asserts that that Plaintiff has not alleged the "who, what, when, and where" of the supposed fraud perpetrated by Accutek as required of fraud claims under Rule 9(b).  ECF No. 3-1 at 7.   Rule 9(b) requires that any complaint alleging fraud state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.  *Id.*  To satisfy the heightened pleading requirements, the plaintiff must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal citations omitted).  In addition, the complaint must indicate "what is false or misleading about a statement, and why it is false" and "be specific enough to give defendants notice of the particular misconduct that they can defend against the charge and not just deny that they have done anything wrong."  *Vess v. Ciba  −Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (internal citations omitted).

In the motion to dismiss, Defendant concedes that Electropura has included "product quotes" and a "sales invoice" in addition to "the names of two of Defendant's employees" in support of the particularity requirement.  ECF No. 3-1 at 6. Notwithstanding those facts, the Defendant nonetheless argues that the Plaintiff's allegations are insufficient.  *Id.*  The Court disagrees.

Rule 9(b) requires Plaintiff to do no more than plead with particularity the circumstances constituting fraud, and Plaintiff has done so.  Electropura has identified Defendant's representations about the "production capacity" and "capability" of the Monoblock system, as well as its "suitability" to meet Electropura's water bottling needs, as false when made.  Complaint ¶¶ 32 & 41.  Specifically, Plaintiff alleges that Defendant's assertions about the bottling-production speed of the Monoblock and the fact that it was made of "sanitary stainless steel" as false representations.  *Id.* ¶ 28.  These factual allegations are detailed and particularized in the Monoblock Quote.  ECF No. 1-2, Exhibit 2 at 15.  The quote states that the Monoblock machine "is capable of Speeds up to 11000 BPH" and that it includes various parts made of stainless steel or as being of a

"sanitary style." *See generally id.* at 13–23. These statements are alleged to be false because the Monoblock's actual production was 1,800 BPH for 680 mL bottles, 2,400 BPH for 380 mL bottles and 1,200 BPH for 1,300 mL bottles, far below the represented production capacity, and because the machine began to oxidize upon arrival. Complaint ¶ 28. The Monoblock Quote includes the letterhead of the Defendant Accutek, the name of the sales representative, Joe L. Ouezada, who prepared the quote, the date on which it was made, December 10, 2012, and the address of both the Defendant and Plaintiff. *Id.* These facts state the "who, what, when, and where" of the alleged fraud. *See, e.g.*, *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1150 (S.D. Cal. 2014) (concluding that the plaintiff had alleged false representations with specificity by identifying which statements were false, detailing who made the statements, the date on which they were made, and in what form they were said); *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1194 (N.D. Cal. 2014) (finding that Rule 9(b) was satisfied by a complaint alleging that the ingredients on the defendant's food label were not natural, as represented, and attaching the label as proof of those allegations). Defendant points to no case law indicating that such allegations are insufficient, s*ee* ECF No. 3-1 at 6–7, and cannot dispute that these allegations put Accutek on notice of their alleged misconduct. Accordingly, Plaintiff has satisfied the requirements of Rule 9(b) despite Defendant's assertions to the contrary.

**B. Sufficiency of the Pleadings**

Given that Plaintiff's Complaint has met the requirements of Rule 9(b), the question becomes whether Plaintiff's allegations have, nonetheless, plead sufficient facts to give rise to a reasonable inference of fraud and conspiracy to commit fraud under 12(b)(6). Defendant argues that Plaintiff's fraud and conspiracy to commit fraud claims fail because Plaintiff has failed to identify any "factual allegations that would establish that Defendant knew that the machine in question was apparently defective, or that Defendant somehow [sic] intended to use this knowledge to defraud Plaintiff." ECF No. 3-1 at 4. Defendant, however, cites to no cases supporting his contention that the

Plaintiff must point to specific factual allegations supporting the elements of knowledge and intent to defraud. ECF No. 3-1 at 4–5; ECF No. 11 at 2–3. What more, Defendant's argument conflates the requirements of Rule 9(b) with the general pleading requirements of Rule 8(a)(2), which only require a "short and plain statement of the claim," Fed. R. Civ. P 8(a), so as to put the defendant on notice of the allegations against him. *See Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003) ("a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"). Rule 9(b) makes clear that "malice, *intent*, *knowledge,* and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added).

In the Complaint, Plaintiff avers that it "is informed and believes" that Defendant had knowledge of the Monoblock's shortcomings and that Accutek made the alleged false representations with "intent to defraud." Complaint ¶¶ 32–33. Contrary to what Defendant alleges, such averments are sufficient to survive general notice pleading. *See, e.g.*, *Harvey v. Maximus Inc.*, 2014 WL6474051 *4 (D. Idaho 2014) (concluding that Plaintiff had adequately plead knowledge of falsity for a fraud claim simply by stating "Defendants knew that its representations were false"); *Michaluk v. Vohra Health Services, P.A.*, 2013 WL 79954 *3 (E.D. Cal. 2013) (finding that plaintiff's averment that "defendant made the statements with the intent to defraud" was sufficient to adequately plead defendant's scienter in fraud claim); *Aleo Solar Deutschland GmbH v. Innovative Mechanical and Elec., Inc.*, 2012 WL 3709632 * 3 (C.D. Cal. 2012) (finding that plaintiffs allegations that the defendant was "aware that they had no intention of" performing as represented was sufficient to adequately plead knowledge under Rule 12(b)(6)). Accordingly, the Court finds that Plaintiff has sufficiently plead knowledge and intent to defraud under Rule 12(b)(6) to survive the motion to dismiss.

## C. Application of Economic Loss Doctrine

Defendant further argues that Plaintiff's fraud claims are barred by California's economic loss rule. ECF No. 3-1 at 5. Put simply, the economic loss rule bars plaintiffs from bringing tort claims when the defendant's breach is nothing more than a violation of

the contractual expectations between the parties. *See, e.g.*, *Butler-Rupp v. Lourdeaux*, 36 Cal. Rptr. 3d 685, 691 (Cal. Ct. App. 2005). A brief background of the economic loss rule can be found in *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004). In *Robinson*, the Supreme Court of California explained that the economic loss rule limits a claimant to contract damages "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly . . . for he has suffered only economic losses." *Id.* at 988 (internal citations omitted).

Although, as Defendant argues, this principle seems to apply to Plaintiff's fraud claims, there are important limitations to this doctrine that apply here. For one, the *Robinson* court made clear that tort damages are permitted in cases "where the contract was fraudulently induced" or otherwise "accompanied by a traditional common law tort, such as fraud . . . ." *Id.* at 990. As stated earlier, Plaintiff's Complaint has adequately plead fraud. Accordingly, the economic loss doctrine does not bar Plaintiff's first and second claims. Moreover, the *Robinson* decision also made clear that the economic loss doctrine does not apply when a manufacturer "agrees that the product was designed to meet the consumer's demands." *Id.* at 989 (quoting *Seely v. White Motor Co.*, 63 Cal.2d 9, 18 (1965)). It is fair, the court reasoned, to charge a manufacturer with "the risk that the product will not match . . . economic expectations . . . [if] the manufacturer agrees that it will." *Id.* This is precisely the case here. Electropura has alleged it sought one of Defendant's machines to meet its bottling-production needs, informed Defendant of those needs, and that Defendant, in turn, recommended the Monoblock to Plaintiff as a solution to those needs. By representing that the Monoblock was suitable for Plaintiff's business, Accutek assumed an independent responsibility that the Monoblock would meet Electropura's bottling-production demands. Accordingly, the economic loss doctrine does not apply. Given these two bases for finding that Accutek's conduct was tortious and given that Electropura has plead harm "above and beyond a broken contractual promise," *id.* at 988, the Court concludes that the economic loss doctrine does not bar Plaintiff's claims from moving forward.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Accutek's Motion to Dismiss for Failure to State a Claim, ECF No.3, is **DENIED.**

**IT IS SO ORDERED.**

Dated:  September 15, 2016

Hon. Gonzalo P. Curiel
United States District Judge