UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMBOTELLADORA ELECTROPURA S.A. de C.V., <br><br> Plaintiff, <br><br> v. <br><br> ACCUTEK PACKAGING EQUIPMENT COMPANY, INC.; and DOES 1 through 25, inclusive, <br><br> Defendants. | Case No.: 3:16-cv-00724-GPC-RNB <br><br> **ORDER** <br><br> **(1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SANCTIONS; and** <br><br> **(2) DENYING PLAINTIFF'S MOTION FOR SANCTIONS** <br><br> **[ECF No. 52]** |

Before the Court is a motion for determination of discovery dispute filed jointly by the parties in this case. (ECF No. 52.) The dispute arises from Plaintiff's late production of a large amount of documents relevant to its claim of consequential damages. Defendant seeks sanctions as a result of Plaintiff's failure to produce these documents as required by Federal Rule of Civil Procedure 26.

On April 12, 2018, Magistrate Judge Robert N. Block issued a report and recommendation (the "R&R") suggesting the Court deny the sanctions request in its entirety. (ECF No. 54.) Both parties have filed objections to the R&R (ECF No. 55 (Defendant); ECF No. 56 (Plaintiff)) and responses to each other's objections (ECF No. 57 (Plaintiff); ECF No. 58 (Defendant)). For the reason set forth below, the Court finds

that continuing the trial date and permitting Defendant to engage in limited discovery will render Plaintiff's Rule 26 violations harmless. The Court also rejects Plaintiff's request for attorneys' fees resulting from this motion.

## I.    Legal Standard

28 U.S.C. § 636(b)(1) provides that after a magistrate judge has issued a report and recommendation and the parties have filed objections, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made." The district court "may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." *Id.* The district court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Aspects of the report and recommendation to which there is no objection may be reviewed with deference. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005); *Swanson v. Comm'r of Soc. Sec. Admin.*, 274 F. Supp. 2d 932, 935–36 (D. Ariz. 2017).

## II.    Background

Plaintiff, a Salvadoran corporation, filed this case on March 25, 2016, asserting claims of fraud, misrepresentation, breach of contract, breach of warranties, and restitution. (ECF No. 1.) Plaintiff alleges that Defendant sold it a defective water bottling machine. (*Id.* ¶¶ 28, 30.)

### A. Protective Order

In a declaration, Plaintiff's counsel Jacob Segura states that in November 2016 he and Defendant's counsel Mitchell B. Malachowski "engaged in a series of telephonic and email discussions and negotiations for the purpose of arriving at a mutually agreeable proposed Joint Discovery Plan." (ECF No. 52-4 at 2.[1]) During that discussion, according to Segura, the attorneys both "perceived the need for [the parties] to jointly enter into [a] 'Stipulation for Protective Order' to safeguard the parties' respective privileged and

---

[1] Page citations in this ruling refer to the pagination provided by the CM/ECF system.

confidential information." (*Id.*)  According to Segura, during these discussions the two attorneys "agreed that the parties' voluntary disclosures would not include information which either side deemed confidential.  Rather we mutually agreed that the exchange of the parties' respective confidential information would take place by and through formal discovery, and then only after the terms and conditions of a mutually agreeable Stipulated Discovery Protective Order had been worked out, and after the Court had signed and entered such a Discovery Protective Order." (*Id.* at 3.)

In a declaration filed with Defendant's objection to the R&R,[2] Malachowski disputes that any such agreement occurred.  Malachowski states that the first mention of a protective order between the parties was in Malachowski's first draft of the parties' joint discovery plan, which he sent to Segura on November 11, 2016, after Segura failed to respond to a meet-and-confer letter.  (ECF No. 55-1 at 2.)  At some point in the next two weeks, Malachowski claims, Segura and Malachowski had a telephone conversation during which "[t]he portion of the proposed plan [regarding confidential information] was not the topic of meaningful discussion," and they "did not discuss, nor agree to, the exclusion of proprietary material from the initial disclosures.  There was no discussion of [Plaintiff] possessing confidential information." (*Id.*)

The parties filed a proposed joint discovery plan to Magistrate Judge David H.

---

[2] "[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); *see also* 28 U.S.C. § 636(b)(1)(C) (in reviewing the R&R, the district court "may also receive further evidence").  The Court finds it appropriate to consider the evidence offered by both parties in their objections to the R&R.  Defendant explains that it did not include in the original joint motion any discussion of conversations between Segura and Malachowski because Defendant's counsel was under the impression that Magistrate Judge Bartick's orders prohibited responsive declarations. (ECF No. 55 at 2 n.1.)  While the Court is not sure why Defendant chose not to include a responsive declaration in the original motion itself, the Court finds that the ends of justice require consideration of all the evidence before the Court so as to avoid the risk of making a consequential decision based on less than all of the available evidence.  In fact, the R&R even noted that "it does not have the benefit of a declaration from Mr. Malachowski in response to the declaration of Mr. Segura, and that it is conceivable Mr. Malachowski would dispute Mr. Segura's characterization of what the two of them agreed to." (ECF No. 54 at 4 n.1.)

Bartick on November 22, 2016. (*Id.* at 3.) That proposed plan included the following statement, which Malachowski claims was in his original draft: "The Parties, however, are currently considering a proposed Stipulation for Protective Order regarding the information produced by Defendants during the Initial Disclosure because anticipated discovery may contain confidential commercial information potentially subject to trade secret protection." (*Id.* at 2–3.) On December 2, 2016, Magistrate Judge Bartick issued a scheduling order setting the deadline for initial disclosures under Rule 26(a)(1) as January 4, 2017. (ECF No. 19.) On January 6, 2017—two days after Defendant made its initial disclosures to Plaintiff—Malachowski sent Segura an email proposing that the parties submit a stipulated protective order and explaining that Defendant was in possession of confidential information "that it wished to produce in accordance with its initial disclosure obligations in this matter." (ECF No. 55-1 at 3.) Having not received a response from Segura, Malachowski sent two follow-up emails on January 10 and 13. (*Id.*) In response to the January 13 email, Segura responded the same day indicated that Plaintiff was "amenable" to a protective order and asked Malachowski to draft one. (*Id.* at 29.) The same day, Segura sent Malachowski Plaintiff's "Initial Disclosures." (ECF No. 52-4 at 32–34.) Contained in those disclosures were a batch of documents Bates Stamped "EE000001-EE000396." (*Id.* at 33–34.)

On January 17, 2017, Malachowski sent Segura a draft stipulated protective order. (ECF No. 55-1 at 3–4.) Despite follow-up emails, a letter, and a phone call, Segura did not respond—other than a January 30 email stating that he would get back to Malachowski "shortly"—until February 16, when Segura sent Malachowski an email with Plaintiff's responses to Defendant's first set of interrogatories and requests for production. (*Id.* at 4, 48.) In that email, Segura stated "Please let me know when you have some available time next week to discuss the terms of a mutually agreeable stipulated protective order." (*Id.* at 48.) Malachowski responded the following day indicating that he was available the following Monday. (*Id.* at 4, 50.) Segura again did not respond, despite another follow-up email, a telephone call, and a letter by

Malachowski. (*Id.* at 4–5.) On March 1, after Malachowski called and emailed Segura once more, Segura responded by email asking Malachowski what time the two should speak the following day; Malachowski responded twenty-some minutes later suggesting 9:30 a.m. (*Id.* at 5, 59, 62.) Segura did not respond to the email and did not call the next morning at 9:30 a.m. (*Id.* at 5.) After 9:45 a.m. passed, Malachowski called and emailed Segura, but to no avail. (*Id.* at 5, 65.) Counsel were apparently able to connect soon after.

On March 10, the parties submitted a joint motion for protective order. (ECF No. 20.) The motion stated the "parties have determined that disclosure and discovery activity in this action are likely to involve production of confidential . . . information for which special protection . . . may be warranted. Specifically, the documents to be protected include Plaintiff's corporate financial data which is necessary to establish damages." (*Id.* at 2.) Magistrate Judge Bartick approved and entered the protective order on March 28. (ECF No. 21.)

### B. Early Disclosures and Discovery Responses

In its January 13, 2017 initial disclosure, Plaintiff identified 396 pages of documents under the heading "Documents and Things." (ECF No. 52-3 at 8–9.) As mentioned above, these documents were the Stamped "EE000001-EE000396." Under the heading of "Damages," Plaintiff stated "The amount of [Plaintiff's] damages is not presently calculated with certainty and is subject [to] further clarification and augmentation based upon the results of still ongoing discovery and additional and ongoing consequential and incidental damages." (*Id.* at 9.) Plaintiff never updated its initial disclosures during the discovery period. (*Id.* at 2.)

On February 16, 2017—prior to the parties' submission of a proposed protective order—Plaintiff responded to Defendant's first set of interrogatories and requests for production ("RFPs"). (*Id.* at 12–34.) The responses included a general objection that the interrogatories and requests "seek disclosure of proprietary and/or confidential business information of [Plaintiff]. To the extent [they] seek such information, [Plaintiff] will

respond only pursuant to a Protective Order under Fed. R. Civ. P. 26(c)." (*Id.* at 13, 27.) At that time, no protective order had been signed by the Court. Despite these objections, Plaintiff did offer responses to the interrogatories and requests for production. In response to Interrogatory 12, which asked "[i]If you contend that you are entitled to recover consequential damages in this matter, identify all documents supporting such contention," Plaintiff responded "See Bates Stamp Nos. EE000001-EE000396." (*Id.* at 18–19.) In response to RFP 5, which requested "[i]f you contend that you are entitled to recover consequential damages in this matter, all documents and electronic data supporting that contention," Plaintiff responded in relevant part, "See Bates Stamp Nos. EE000001-EE000396." (*Id.* at 30.)

On April 7, 2017—ten days after Magistrate Judge Bartick approved the protective order—Defendant produced to Plaintiff, under the terms of the protective order, 252 pages of confidential documents. (ECF No. 55-1 at 6.)

### C. Defendant's Rule 30(b)(6) Deposition Notice

On June 21, 2017, Defendant served Plaintiff with a notice of corporate deposition under Fed. R. Civ. P. 30(b)(6), setting a date of July 17, 2017. Five of the "matters for testimony" listed in the notice were relevant to Plaintiff's damages. (ECF No. 52-3 at 114–15.) The notice also stated that each "deponent will be required to produce at the deposition the documents and electronically stored information identified in Schedule B attached to this notice." (*Id.* at 110.) The matters discussed in Schedule B included documents and electronic data relating to Plaintiff's lost profits, loss of goodwill, consequential damages, and attempts to mitigate damages. (*Id.* at 121.) Upon receiving this notice, Plaintiff designated twelve of its employees to compile documents responsive to Defendant's corporate deposition notice; in all, these employees spent 696 hours over six weeks working to complete this compilation. (*See* ECF No. 52-5.) The Court will refer to this compilation of documents as the "Consequential Damages Documents."

The Rule 30(b)(6) depositions were delayed on several occasions. On July 19, 2017, the parties filed a joint motion to extend the discovery deadline to August 25, 2017.

(ECF No. 34.)  Magistrate Judge Porter granted the motion on July 20.  (ECF No. 35.)
On July 26, Malachowski called Segura and indicated that, in light of a pending motion
for partial summary judgment, Defendant was taking the depositions off calendar, but it
might re-notice them prior to the August 25 discovery deadline.  (ECF No. 52-4 at 8–9.)
The Court issued its ruling on the motion for partial summary judgment on August 2,
2017.  (ECF No. 36.)  In the coming weeks, Segura and Malachowski worked to resolve
scheduling issues, but the August 25 discovery deadline elapsed without the depositions
being taken.  (ECF No. 52-4 at 9–13.)  On August 25 Malachowski suggested to Segura
that October 23 could be possible date for the deposition, but Malachowski failed to
follow up.  (*Id.* at 13.)

On September 15, 2017, Judge Porter extended the discovery deadline to
November 13, 2017.  (ECF No. 37.)  Nonetheless, Defendant's counsel again took no
action to initiate the depositions, and November 13 passed without the depositions being
re-noticed.  (ECF No. 52-4 at 14.)  During a November 16 settlement conference, both
parties asked for another extension of the discovery deadline.  (*Id.* at 16.)  Magistrate
Judge Porter granted the extension for specific depositions of both parties' witnesses, as
well as both parties' Rule 30(b)(6) deponents, to December 15, 2017.  Magistrate Judge
Porter warned, however, that "[t]he Court will not entertain any further motions to extend
the discovery cutoff."  (ECF No. 40 at 2.)  On December 5, 2017, Malachowski served
Segura with an amended corporate deposition notice that omitted all of the 28 categories
of document requests that were included in the original notice.  (ECF No. 52-4 at 16–17.)
Ultimately, none of the depositions went forward.  (*Id.* at 17.)

On February 10, 2018, Segura filed an ex parte motion to modify the scheduling
order in which he sought a re-opening of the discovery period.  (ECF No. 41.)  Magistrate
Judge Stormes denied the motion on February 13.  (ECF No. 45.)  On February 15—the
day before the deadline for the parties to submit a proposed pretrial order—Segura
produced to Malachowski the Consequential Damages Documents and listed these
documents on Plaintiff's proposed trial exhibit list.  (ECF No. 52-3 at 3; ECF No. 52-4 at

7

19–20.)  The documents are 8.2 gigabytes in size in compressed form, and contain 2 video files and 93 PDFs totaling 27,424 pages.  (ECF No. 52-3 at 3.)  They "appear to largely be [Plaintiff's] accounting and financial records from April 2013 to October 2016, and marked confidential pursuant to the protective order."  (ECF No. 52-1 at 5.)

Segura claims that he had always intended to produce the Consequential Damages Documents "through the discovery process," but because the depositions never went forward, he never had the chance to provide them.  (ECF No. 52-4 at 18.)  According to his declaration, this was because he wanted to schedule all depositions during the same week in San Diego.  (*Id.* at 18–19.)

### D. Current Motion and the R&R

On March 12, the parties filed the instant joint motion for determination of dispute.  (ECF No. 52.)  In it, Defendant seeks sanctions against Plaintiff primarily as a result of Plaintiff's delayed production of the Consequential Damages Documents, and Plaintiff— contending that the sanctions request is frivolous and that Defendant failed to meet and confer in good faith over this request—seeks attorneys' fees as a result of this motion.  (ECF No. 52.)  According to Defendant, sanctions are warranted because Plaintiff had an obligation to disclose the Consequential Damages Documents (1) as part of its initial disclosures under Rule 26(a)(1)(a), and/or (2) in response to Defendant's first set of discovery requests.  (ECF No. 52-1 at 7–9.)

On April 12, 2018, Magistrate Judge Block issued an R&R recommending that the Court deny the motion for sanctions in its entirety.  (ECF No. 54.)  The R&R first rejects Plaintiff's assertion that none of the sanctions sought by Defendant are available because there has been no court order compelling Plaintiff's compliance.  (*Id.* at 6–8.)  The R&R explains that this rule, which was imposed by the Ninth Circuit in *Uniguard Security Insurance Company v. Lakewood Engineering & Manufacturing Corporation*, 982 F.2d 363 (9th Cir. 1992), was abrogated in 1993 by an amendment to Rule 37.  (ECF No. 54 at 7.)  Plaintiff does not object to this conclusion.  (*See* ECF No. 56.)

Next, the R&R rejects Defendant's argument that Plaintiff violated its initial

disclosure requirements under Rule 26(a)(1) by failing to produce the Consequential

Damages Documents until February 2018. The R&R reasons that, according to Segura's

declaration, Malachowski "had agreed well in advance of the initial disclosures that

[Plaintiff] did not have to provide any of its damages-related privileged and confidential

corporate financial information as part of its initial disclosures, but rather need only

provide such information in response to formal discovery requests and pursuant to the

terms of a mutually agreed, Court-approved and entered Discovery Protective Order."

(ECF No. 54 at 8.) The R&R states that Segura's characterization of the attorneys'

agreement to produce confidential information only through "formal discovery" is

consistent with the representations in the parties' March 10, 2017 joint motion for

protective order in which they state "disclosure and discovery activity in this action are

likely to involve production of confidential, proprietary, or private information for which

special protection . . . may be warranted," that "the documents to be protected include

Plaintiff's corporate financial data which is necessary to establish damages," and "that

the parties were requesting the entry of the proposed protective order '[i]n order to permit

this discovery to go forward.'" (*Id.* (quoting ECF No. 20 at 2).) The R&R also notes that

Rule 26(a)(1)(A)(iii)'s initial disclosure requirements are "qualified by the phrase,

'unless privileged or protected from disclosure.'" (*Id.*) In Magistrate Judge Block's

view, Plaintiff's "corporate financial records constituted confidential information that

[Plaintiff] could reasonably assert were protected from disclosure in the absence of a

protective order."

The R&R next rejects Defendant's argument that Plaintiff violated its duty to

produce the Consequential Damages Documents in response to Defendant's first-set

Interrogatory 12 and RFP 5, which asked for evidence of consequential damages. The

R&R explains that, at the time Defendant sent Plaintiff its first set of interrogatories and

RFPs, Segura and Malachowski had not yet submitted their motion for protective order.

The R&R points out that two days after the protective order was entered, Defendant

submitted an ex parte motion for determination of discovery dispute seeking an order

compelling Plaintiff to respond to several aspects of Defendant's first-set Interrogatories and RFPs, none of which included Interrogatory 12 or RFP 5. (*Id.* (citing ECF No. 22).) The R&R explains that, despite Defendant being on notice of Plaintiff's confidentiality objection to the first-set interrogatories and RFPs, Defendant neither challenged that objection nor "move[d] to compel a further response to Interrogatory [12] or [RFP] 5." (*Id.* at 9–10.) The R&R also reasons that Defendant's June 21, 2017 Rule 30(b)(6) deposition notice—which included a production of documents relevant to Plaintiff's computation of damages—rendered moot any insufficient response by Plaintiff to Defendant's first-set Interrogatory 12 or RFP 5. (*Id.* at 10.)

The R&R concludes by noting that according to Segura's declaration Plaintiff was prepared to produce the Consequential Damages Documents in response to Defendant's Rule 30(b)(6) deposition notice, and if Defendant had "proceeded to take those depositions, instead of repeatedly delaying and ultimately electing not to go forward with them," Defendant would have received the documents prior to February 2018. (*Id.*) Indeed, the R&R suggests that Defendant's "conduct in ultimately electing to forego taking the Rule 30(b)(6) depositions and then turning around and taking the position that case dispositive sanctions should be imposed on [Plaintiff] for not producing the documents [Plaintiff] had been prepared to produce at the time of the depositions smacks of gamesmanship." (*Id.* at 11.) The R&R recommends that "no sanctions under Rule 37(c)(1), let alone the case dispositive sanctions sought" are appropriate. (*Id.* at 9, 10.)

## III. Discussion

In light of the above facts offered by Defendant, the Court concludes that Plaintiff violated its obligation to supplement its initial disclosure and responses to Defendant's discovery requests by failing to produce the Consequential Damages Documents until February 2018. The Court nonetheless concludes that a continuance of the trial to permit Defendant to review the Consequential Damages Documents and depose one of Plaintiff's witnesses—Clara Rodriguez de Granados—will render most of Plaintiff's violations harmless. The Court will not, however, permit Plaintiff to offer evidence in

support of its claim for consequential damages through testimony other than that offered by Ms. Rodriguez de Granados.

## A. Whether The Agreement Claimed By Segura Occurred

Defendant first objects to the R&R on the ground that Segura's declaration in opposition to Defendant's sanctions request contains a "material misrepresentation" about Segura's and Malachowski's understanding of how confidential information would be produced in this case. (ECF No. 55 at 2–5.) Defendant asserts that, contrary to Segura's assertion, there was no agreement that confidential information would be excluded from initial disclosures and produced only through formal discovery. (ECF No. 55-1 at 2.) According to Malachowski, while he and Segura spoke on the telephone about the parties' proposed discovery plan, the issue of the need for a protective order "was not a topic of meaningful discussion." (*Id.*) If such an agreement was made, Defendant contends, it would have been included in the proposed discovery plan or protective order. In support of its side of this story, Defendant points to the series of correspondence between Malachowski and Segura discussed above, which suggest that (1) Malachowski drafted the proposed discovery plan eventually submitted to the Court, and (2) Malachowski first raised with Segura the issue of a protective order after the discovery plan was submitted because Defendant was "in possession of additional [proprietary and confidential] documents it wishes to produce as part of its initial disclosures." (*Id.* at 23.) These communications, according to Defendant, "indicate[] that there was *no* prior discussion of the need for a protective order." (ECF No. 55 at 4.) Defendant also points out that immediately after the protective order was entered, Defendant supplemented its initial disclosures by providing Plaintiff with confidential materials. (*Id.* at 4–5.)

Plaintiff contends that the correspondence and filings cited by Defendant do not establish that no such agreement was reached between Segura and Malachowski. (ECF No. 57 at 8–9.) Plaintiff focuses on Malachowski's statement that no "meaningful" discussion about the need for a protective order occurred between him and Segura,

asserting that this choice of wording implies there indeed was discussion of that issue. Plaintiff also argues that the wording of the parties' joint discovery plan—which indicates a recognized need to protect confidential information, specifically Plaintiff's evidence of damages—suggests that such an agreement did occur between the attorneys.

Based on the evidence before it, the Court finds it most likely that Segura and Malachowski did not reach an agreement that the parties in this case would produce proprietary and confidential information only through the course of formal discovery. The only evidence suggesting that this specific agreement occurred is Segura's declaration asserting so. All other evidence before the Court suggests that no such agreement was reached. Contrary to Plaintiff's assertion, the fact that Malachowski states that he and Segura had no "meaningful" discussion about the protective order supports Defendant's position. That is to say, an agreement to relieve the parties of their initial disclosure requirements would require at least some "meaningful" discussion of the issue. Moreover, the fact that neither the discovery plan nor the protective order says anything about this alleged agreement is strong evidence against its existence. The fact that Defendant supplemented its own initial disclosures to Plaintiff with confidential materials just ten days after the protective order was issued also strongly suggests that Malachowski did not understand that the parties' proprietary and confidential information need only be disclosed in response to formal discovery requests.

## B. Whether Plaintiff Violated Rule 26's Requirements

Next, Defendant objects to the R&R by arguing that Plaintiff did violate its discovery obligations under Rule 26. Defendant asserts that Plaintiff did so in two ways: (1) failing to update its initial disclosures, and (2) failing to update its responses to Defendant's first-set Interrogatory 12 and RFP 5. The Court agrees with Defendant on both grounds.

### i. Initial Disclosures

Rule 26(a)(1) sets forth the parties' automatic obligations to make initial disclosure of certain documents "within 14 days of the parties' Rule 26(f) conference unless a

different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan." Fed. R. Civ. P. 26(a)(1)(C). As discussed above, the parties indicated in their proposed discovery plan that there was confidential information in possession of both parties and as a result they intended to seek a protective order. In light of the Court's conclusion that the parties did *not* agree to exempt such confidential information from their initial disclosures, the Court concludes that the parties were obligated to complete their initial disclosures within 14 days after the Court approved the parties' protective order, which would have been April 11, 2017.

Rule 26(a)(1)(A)(ii) required Plaintiff to produce in its initial disclosures a copy or description of all documents in its possession that it "may use to support its claims or defenses, unless the use would be solely for impeachment." Rule 26(a)(1)(A)(iii) required Plaintiff to provide Defendant with "a computation of each category of damages" and "make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Each party making a disclosure under Rule 26(a) must also supplement or correct such disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect," assuming the information had not already been disclosed through other means. Fed. R. Civ. P. 26(e)(1)(A).

Defendant argues that Plaintiff violated Rule 26(a)(1)(A)(ii) by failing to make a timely disclosure of the Consequential Damages Documents, which was evidence Plaintiff "may use to support its claims."[3] (*See* ECF No. 52-1 at 8.) In *R&R Sails, Inc. v.*

_____

[3] The R&R seems to treat Defendant's argument as asserting a violation of subparagraph (a)(1)(A)(iii). (*See* ECF No. 54 at 8–9 (invoking Rule 26(a)(1)(A)(iii)'s language exempting from inspection documents that are "privileged or protected from disclosure").) In its memorandum, however, Defendant explicitly relies only on subparagraph (ii). (*See* ECF No. 52-1 at 8 (the Consequential Damages Documents "are necessary to prove [Plaintiff's] case-in-chief, or in terms of Rule 26(a)(1)(A)(ii) these are documents [Plaintiff] 'may use to support its claims,'" meaning Plaintiff "was

*Insurance Company of Pennsylvania*, 673 F.3d 1240 (9th Cir. 2012), the Ninth Circuit seems to have adopted Defendant's view of subparagraph (ii)'s scope. There, an insured pursued, among others claims, a bad-faith denial claim against an insurer. The insured sought attorneys' fees and punitive damages as a result of its claim. In its initial disclosures, the insured disclosed that it sought $350,000 in fees and stated "this amount is estimated at this time and will be amended at the time of trial." *Id.* at 1243. The insured did not state in the disclosure "that it planned to use invoices to support its claim for" fees, and it did not produce any such invoices to the insurer. *Id.* Two months after the discovery period closed the insurer asked the insured to produce all documents relating to the insured's claimed damages. *Id.* The insured did not turn over the invoices. *Id.* In a pretrial memorandum, the insured stated that it planned to offer at trial invoices reflecting its claimed fees, and revised its estimate of damages to $450,000. *Id.* The insured did not produce these invoices until after the final pretrial conference. *Id.* The district court ultimately precluded the insured from using the invoices as evidence because it had violated "Rules 26(a) and (e)." *Id.* at 1245.

The Ninth Circuit held that the district court did not abuse its discretion in concluding that the insured had violated its initial disclosure requirements.[4] *Id.* at 1246–47. The court reasoned that subparagraph (ii) "required [the insured] to produce either a copy or a description of the documents on which it based its damages calculation."[5] *Id.* at

---

fully obligated to identify or produce all of these documents in January 2017 as part of its initial disclosures").)

[4] The panel reversed, however, on the ground that because the district court's exclusion amounted to a dismissal of the insured's cause of action, the district court was obligated to determine whether the discovery violation was willful, and also consider the availability of lesser sanctions. *Id.* at 1247–48.

[5] The court qualified its discussion with an initial disclaimer that "[c]ontrary to the district court's apparent suggestion," the insured "was not required to affirmatively produce its attorney's fee invoices during the discovery period without a request from" the insurer. *Id.* at 1246. The only way to square this disclaimer with the panel's following statement that subparagraph (ii) required the insured to make an initial disclosure of "a copy or a description of the documents on which it based its damages calculation" is to read the disclaimer as asserting that outright production of the documents themselves, as opposed to copies or a description of the documents, was not necessary to satisfy the insured's initial disclosure obligations.

1246.  The insured did not satisfy that obligation, the panel explained, because the insured merely "provided the approximate amount of [its] fee request without describing the documents on which it based the request," and it never supplemented that initial disclosure "after it became evidence that the initial disclosures were incomplete."  *Id.* at 1246–47.  The panel then explained that "[*i*]*n addition*, though Rule 26(a)(1)(A)(iii) did not require affirmative production of the invoices, it required" the insured to make them available for inspection, which the insured did not do when the insurer requested them.  *Id.* at 1247 (emphasis added).

The *R&R Sails* description of subparagraph (ii)'s requirements makes clear that Plaintiff did not meet its disclosure obligations under that provision.  While outright production of the original Consequential Damages Documents was not necessary, Plaintiff was required to "produce either a copy or a description of the documents on which it based its damages calculation," which it was obligated to do.  *Id.* at 1246.  Because Plaintiff never supplemented its original disclosure after the protective order was issued, Plaintiff failed to comply with its duty to supplement its initial disclosures under Rule 26(e)(1)(A).

### ii.  Interrogatory 12 and RFP 5

Even if Plaintiff did not violate its initial disclosure obligations, it is clear that Plaintiff failed to respond properly to Defendant's discovery requests.  In addition to requiring parties to supplement their initial disclosures, Rule 26(e)(1)(A) provides that a "party who has . . . responded to an interrogatory [or] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."[6]

---

[6] As noted above, this provision is qualified by the assertion that supplementation need not be made "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  There is no suggestion here that Plaintiff otherwise made Defendant aware of the information contained in the Consequential Damages Documents.

Defendant argues that Plaintiff failed to supplement its response to Interrogatory 12 and RFP 5 in a timely manner after the Court issued the protective order. The R&R recommends that the Court reject this argument. It points out that two days after the protective order was issued, Defendant filed a motion to compel Plaintiff to further respond to several aspects of Defendant's first-set discovery requests. Those specific aspects of the first-set discovery requests did *not* include Interrogatory 12 or RFP 5. (ECF No. 22.) The R&R reasons that

> [e]ven though [Defendant] clearly was on notice from the statement in the Joint Motion for a Protective Order and from [Plaintiff's] general objection to both sets of discovery that [Plaintiff] had not produced or identified responsive documents that supported its consequential damages claims, [Defendant] did not move to compel a further response to Interrogatory No. 12 or Request for Production No. 5. Nor did [Defendant] challenge the above-[referenced] general objection.

(ECF No. 54 at 9–10.) The R&R also reasons that the protective order had not been issued when Plaintiff responded to Defendant's first-set discovery requests, and "by renewing its discovery requests after the entry of the Protective Order for the same discovery relating to" Interrogatory 12 and RFP 5 in its Rule 30(b)(6) deposition notice, "the insufficiency of Plaintiff's earlier responses to those discovery requests, which [Defendant] had never challenged, became moot." (*Id.* at 10.)

The Court respectfully disagrees with both lines of the R&R's reasoning. First, the fact that Defendant did not move to compel a full response to Interrogatory 12 and RFP 5 after the protective order was issued did not alter Plaintiff's obligation under Rule 26 to supplement its incomplete responses to Interrogatory 12 and RFP 5. In its response to Defendant's first set of discovery requests, Plaintiff objected on the basis that "they seek disclosure of proprietary and/or confidential business information," and "[t]o the extent the[y] do seek such information, [Plaintiff] will respond *only pursuant to a Protective Order* under Fed. R. Civ. P. 26(c)." (ECF No. 52-3 at 13, 27 (emphasis added).) Once the Court issued the protective order on March 28, 2017, Rule 26(e)(1) required Plaintiff to supplement its responses to Interrogatory 12 (seeking identification of "all documents

supporting" Plaintiff's claim of consequential damages) and RFP 5 (seeking production of "all documents and electronic data supporting" Plaintiff's claim of consequential damages) in a timely manner. Not only did Plaintiff not do so; it did not even begin to compile the Consequential Damages Documents until late June 2017. (*See* ECF No. 52-5 at 4.)

As to the R&R's second point, the Court is unable to find any case law supporting the proposition that a deposition notice renders moot an earlier discovery request covering the same subject matter. Without such authority, the Court must assume that Rule 26(e)(1)(A) means what it says: a party that has responded to an interrogatory or request for production incompletely must supplement that response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete."

It should also be noted that even if the deposition notice did supersede Defendant's earlier discovery request, there is no explanation for Plaintiff's failure to produce the Consequential Damages Documents by the final discovery deadline of December 15, 2017, which Magistrate Judge Porter made explicitly clear would not be extended. (ECF No. 40 ("The Court will not entertain any further motions to extend the discovery cutoff.").) And even if Segura for some reason thought Magistrate Judge Porter's warning was not serious, there is no explanation for his waiting two months *after* the expiration of that deadline to file another extension request.

In sum, the Court concludes that even if Plaintiff did not violate its initial disclosure requirements, it violated its duty to supplement its incomplete responses to Interrogatory 12 and RFP 5.

### C. Sanctions

The violations found above trigger the possibility of sanctions under Rule 37. That rule provides "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). While Rule 37(c)'s sanctions are "self-executing," the Ninth Circuit gives district courts

3:16-cv-00724-GPC-RNB

"particularly wide latitude" in determining whether sanctions are appropriate. *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 859 (9th Cir. 2014) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).

Plaintiff offers no substantial justification for its failure to comply with its discovery obligations. First, Plaintiff claims that Segura and Malachowski reached the agreement discussed at length above, that is, that they would not produce confidential information except in response to formal discovery requests. Even if that agreement did occur, that does not explain Plaintiff's failure to supplement its responses to Interrogatory 12 or RFP 5, which were formal discovery requests. The best explanation for Plaintiff's failure to supplement its responses to Interrogatory 12 or RFP 5 is Segura's claim that he intended to produce the Consequential Damages Documents at the Rule 30(b)(6) deposition noticed by Defendant. But Plaintiff fails to explain why (1) it did not begin compiling the Consequential Damages Documents until June 2017, or (2) it waited two months after the final discovery deadline expired to produce them. According to Plaintiff, it took six weeks to compile the Consequential Damages Documents. (*See* ECF No. 52-5 at 8.) Assuming this compilation effort began within ten days of Plaintiff receiving Defendant's Rule 30(b)(6) deposition notice, Plaintiff would have had completed compiling the Consequential Damages Documents by mid-August 2017, approximately four months before the final discovery deadline and six months before Plaintiff actually produced the documents. The Court cannot find any justification for these delays.

The Court concludes, however, that a continuance of the trial will render Plaintiff's Rule 26 violations harmless. *See Bailey v. Shell Western E&P, Inc.*, 609 F.3d 710, 729 (5th Cir. 2010) (considering, when determining whether Rule 37(c)'s exclusionary sanction is appropriate, "the possibility of curing such prejudice by granting a continuance"). At the June 28, 2018 motion in limine hearing, Defendant's counsel spoke of the effort that will be required to review and respond to the Consequential Damages Documents. Based on that discussion, the Court believes that reopening

discovery for the limited purpose of permitting Defendant to depose Plaintiff's designated expert on the issue of consequential damages would cure the prejudice that would result from otherwise moving forward with the current trial date and allowing Plaintiff to offer as evidence the Consequential Damages Documents.

**The Court therefore orders that the trial in this case shall be rescheduled to begin on October 29, 2018 at 9:00 a.m.  Discovery is hereby reopened for the limited purpose of permitting Defendant to depose Clara Rodriguez de Granados, who has been designated by Plaintiff as an expert who will provide testimony at trial regarding the financial consequences suffered by Plaintiff as a result of Defendant's conduct.**

During the most recent hearing, Plaintiff's counsel named Ms. Rodriguez de Granados as the only expert that would speak on the issue of consequential damages at trial.  Because the continuance of the trial announced in this order permits Defendant to depose only Ms. Rodriguez de Granados, **the Court will exclude at trial any testimony in support of Plaintiff's consequential damages claim offered by any witness other than Ms. Rodriguez de Granados.**  Any such testimony would prejudice Defendant because Defendant will not have had the opportunity to depose that witness on the issue of consequential damages.

Beyond Rule 37(c), the Court possesses inherent authority to enter sanctions against attorneys who engage in misconduct.  *See Knickerbocker v. Corinthian Colls.*, 298 F.R.D. 670, 677 (W.D. Wash. 2014).  The Court finds that use of such inherent power to sanction Plaintiff under these circumstances would not be appropriate.  While it is clear that Plaintiff violated its discovery duties in this case, Defendant's counsel's missteps have also contributed to the current situation.  Malachowski's failure to provide a responsive declaration in the joint motion for determination of this dispute led to a significant waste of judicial resources.  Magistrate Judge Block even noted that he was issuing the R&R on an incomplete record because he did not have the benefit of a statement from Malachowski about the agreement Segura claims he and Malachowski

reached. Malachowski's failure to include in the original motion a declaration offering his side of the story prevented the Court from efficiently utilizing the report and recommendation procedures. In light of that failure, the Court finds sanctions against Plaintiff to be unwarranted.

In sum, the Court finds that the most appropriate way to resolve the current dispute between the parties is to continue the trial and reopen discovery for the limited purpose of permitting Defendant to depose Clara Rodriguez de Granados.

### D. Plaintiff's Objections to the R&R

In the parties' joint motion, Plaintiff argued that Defendant failed to meet and confer in good faith with Plaintiff before proceeding with its request for sanctions.[7] (ECF No. 52-2 at 10–11.) Plaintiff pointed to the fact that approximately ten minutes after Segura and Malachowski telephonically met and conferred about the discovery dispute at issue here, Malachowski sent Segura the contents of its motion for sanctions. (*See* ECF No. 52-4 at 80.) According to Plaintiff, the fact that Malachowski had prepared the motion prior to the parties' meet-and-confer conversation means that Malachowski did not meet and confer in good faith over this discovery dispute. (ECF No. 56 at 8–9.) The Court disagrees. The only conclusion the Court can draw from the fact that Malachowski prepared his motion prior to the attorneys' conference is that Malachowski was prepared to file the motion immediately should the meet-and-confer conference not resolve the dispute. According to an email provided by Plaintiff, during the attorneys' meet-and-confer conference Segura made an offer to present his "client witnesses" the following week "for deposition and examination concerning the" Consequential Damages Documents, which Malachowski turned down. (ECF No. 52-4 at 77–78.) The Court does not view Malachowski's declination of that offer to constitute bad faith. At that point, discovery had been closed for three months.

---

[7] The R&R does not address this issue.

In sum, the Court does not find that Defendant failed to meet and confer in good faith with Plaintiff prior to filing the instant motion for sanctions. In light of that conclusion, the Court rejects Plaintiff's request for attorneys' fees as a result of the instant motion.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Plaintiff failed to make a timely production of the Consequential Damages Documents under Rule 26. The Court concludes, however, that a continuance of the trial and reopening discovery for a limited purpose renders Plaintiff's violations harmless. Defendant may depose Plaintiff's expert Clara Rodriguez de Granados. Because of the limited nature of the reopened discovery period, however, the Court will not permit Plaintiff to offer evidence of consequential damages in the form of testimony by anyone other than Ms. Rodriguez de Granados. Last, the Court does not find that Defendant's counsel failed to meet and confer in good faith over this dispute.

**IT IS SO ORDERED.**

Dated: July 5, 2018

Hon. Gonzalo P. Curiel
United States District Judge